W. G. E. See, receiver,

*v.*

Heppenheimer, Naumberg, Kraus, Lummis, Herman, Lauer et al.

1.· A bill by a receiver of a corporation against the stockholders and bond-holders of the company alleged that certain persons formed a pool to promote the organization of a stock company to buy paper-mills, and procured options on thirty-nine mills at a certain price; that they transferred all options to one man; that they made from him a pretended purchase by the company for mortgage bonds, preferred stock and common stock; that they paid the origi-. nal owners partly in cash, partly in preferred stock and partly in common stock, at a price far beyond the real value, and still had a large amount of bonds and stock of both kinds to be distributed among themselves as pro-' moters; and prayed that the promoters should be decreed to make good to the· company any loss by reason of any of such bonds or stock in the hands of *bona fide* purchasers. As to six demurring defendants, the bill alleged that certain of the bonds and stock were held by them and others; that they were not *bona fide* purchasers of such bonds, or *bona fide* creditors or stockholders of the company, and, in so far as they were not said promoters, they were the· mere agents of the promoters. The object of the bill was to ascertain the amount for which each of the bonds should be held, and reduce the secured indebtedness accordingly; to declare all bonds issued without consideration void; to ascertain the amount actually paid for the stock, and, after applying the assets to payment of creditors, to assess the difference *pro rata* against such stockholders as had not paid for their stock.—*Held*, that the bill was not multifarious.

2. The statements of such bill were sufficient at least to throw on such de-murring defendants the burden of proving that they were *bona fide* purchasers for value, without notice, of the bonds and stock held by them.

3. Nor is the bill open to the objection that complainant's remedy is at law.

4. The attorney-general was not a necessary party to a bill by the receiver of an insolvent corporation formed for the purpose of creating a monopoly against the stockholders and bondholders, to ascertain which of the stock-holders have paid for their stock and which have not, and the amount neces-sary for each one to pay, and to declare such bonds void.

On demurrer.

*Mr. Francis J. Swayze* and *Mr. J. De Witt Warner* (of New York), for the complainant.

*Mr. Eugene Stevenson* and *Mr. Otto Crouse,* for the demurrants.

PITNEY, V. C.

The demurrer is filed by six out of about two hundred defendants, and is—*first,* on the general ground of want of equity; *second,* multifariousness and misjoinder, and *third,* want of parties.

The complainant sues as receiver of an insolvent corporation. The defendants are stockholders and mortgage bondholders of the corporation.

The bill is voluminous and the defendants numerous. The endeavor of the complainant seems to have been to bring in all the stockholders and bondholders so far as he could ascertain them.

The bill alleges that the bonds and stock were issued without consideration paid, or if any, only a small part of the face value of a portion of the bonds and stock; and the object of the bill is to ascertain the amount for which each of the bonds should be held; to reduce the secured indebtedness of the company accordingly; to declare all those bonds that have been issued without any consideration void in the hands of the holders; to ascertain the amount actually paid to the company for their stock by the several stockholders, and then, after applying all the assets to the payment of the creditors, to assess the difference *pro rata* against such stockholders as have not paid for their stock in full.

The allegation of the bill, shortly stated, is that a certain firm of lawyers in New York and another firm of lawyers in Chicago, together with two or three other individuals, combined and made up a pool for the purpose of promoting the organization of a stock company for the purpose of buying up a large number of paper-mills situate in several different states, and that, for that purpose, they procured options on thirty-nine different mills at a certain price; that, having procured those

**16**

options, they organized the insolvent company under the laws of this state, and then transferred all the options to one man, who was a mere figurehead for the pool; then made a pretended purchase by the company from this figurehead, for the consideration of $1,000,000 in mortgage bonds, $1,000,000 in preferred stock and $3,000,000 in common stock; that they, in turn, paid for the property to the original owners partly in cash, partly in preferred stock and partly in common stock, at a price far beyond its real value, and still had a large amount of bonds and stock of both kinds to be distributed among themselves as promoters.

So far, the case somewhat resembles that of *Plaquemines Tropical Fruit Co.* v. *Buck, 7 Dick. Ch. Rep. 219,* and *Woodbury Heights Land Co.* v. *Loudenslager, 35 Atl. Rep. 436,* and, so far as respects the cancellation and reduction of the mortgage bonds, it resembles the case of *Baker, Receiver,* v. *Guarantee Trust and Safe Deposit Co., 31 Atl. Rep. 174.*

The charge against these demurring defendants is that a certain number of the first mortgage bonds was issued to the pool of promoters, some for cash and some not for cash and therefore without any consideration, and that there was issued to the holders of this lot of bonds, and as a gratuity and wholly without consideration, two thousand shares of the preferred stock, of the aggregate par value of $200,000, and four thousand shares of the common stock, of the aggregate par value of $400,000; and that the six defendants (among others) are the "holders of the bonds of said company and of the preferred or common stock of said company *so issued as aforesaid,* and for which no consideration whatever has ever been paid to said company." And further, that the persons named "were not, and have never become, *bona fide* purchasers for value of said bonds or *bona fide* creditors or stockholders of said company, and that, in so far as they were not of said promoters, they were in the premises the mere agents and representatives of said promoters, and that said promoters procured such bonds to be issued to said bondholders instead of to the promoters themselves, with the intent thereby to prevent said company from resisting enforcement of

liability against it of said bonds; and that so far as others than said promoters have been or are now holders of any of said bonds, such bonds in their hands are subject to such equities as existed at the date of their pretended issue or delivery to the promoters."

There is a further general charge that the promoters, among whom are the defendants Heppenheimer and Herman, should be decreed to make good to the company any loss by reason of any of these bonds or this stock getting into the hands either of irresponsible parties or of *bona fide* purchasers for value.

With regard to the charge of multifariousness: In order to ascertain just how much is actually due from the company on the bonds, and to realize upon the assets and ascertain the deficiency to be charged against the stockholders, it seems to me that all the inquiries set on foot by the bill are necessary, and the demurring defendants are necessary parties, to the end that they may be bound by the result of the litigation and be properly held liable for their share of the deficiency.

With regard to the question of the actual liability of the defendants, it is quite clear that if they have received either the stock or the bonds from the company, without having paid for them, they are liable to respond to the company. This is admitted by demurrants.

The argument of defendants' counsel was that they are not shown not to be *bona fide* purchasers for value from some previous holder. On the other hand, it was argued, first, that the statements in the bill above set forth are sufficiently explicit allegations that these defendants received their bonds and stock, or one of them, without consideration; or, at the furthest, that the burden is cast on them to show that they were *bona fide* purchasers. And further, it was urged that by the law of the land there can be no such thing as a *bona fide* purchaser of stock from a subscriber who has not paid for the same in full.

I am of the opinion that the counsel of complainant are right in their first position, and that the statements of the bill are sufficient at least to throw upon the defendants the burden of proving that they are *bona fide* purchasers for value without

notice. I do not find it necessary to consider and determine whether the fact, if it be a fact, that they paid to a previous holder full value without notice will protect them.

Next it was urged that the remedy of the complainant is at law and not in equity, and *Barkalow* v. *Totten, 8 Dick. Ch. Rep. 573*, is relied upon. But I think that the case in hand is distinguishable from that case. There an order had already been made authorizing the receiver to call in the whole amount of the unpaid subscriptions, and to enforce payment of such unpaid subscriptions by suit if necessary against each of the delinquent stockholders. That order was made upon notice to each of the defendants, and it was held by the learned vice-chancellor that such order having been made after notice to each of the parties, an action at law would lie against each severally, and an action against all jointly in equity could not be maintained.

Here there has been no such order made, and the very object of the suit is, in effect, to obtain a decree which will amount to such an order—that is, an ascertainment as to which of the stockholders have paid and which have not, and the amount necessary for each one to pay. The case thus viewed seems to come within the principles laid down in *Wetherbee* v. *Baker, 8 Stew. Eq. 501*, the only difference being that in that case the suit was brought by a single creditor, while here it is brought by the receiver, who represents all the creditors and is entitled to all remedies which they would have.

Finally, it was urged that the attorney-general is a necessary party by reason of the character of the corporation, which was formed, as is alleged, for the purpose of creating a monopoly in paper-making.

But I am unable to see why that feature gives the state any interest in the present affair. The state, presumably, would be interested either in preventing the organization of such a corporation or in arresting its work after its organization. Here, however, the company is already dissolved, and therefore harmless. The present suit relates wholly to contractual and statutory obligations arising out of its existence and operations. Such obligations are not affected by its obnoxious character, at least

such of them as are here involved. Such I understand to be the view recently expressed by Vice-Chancellor Reed in the *American Tobacco Company Case.*

I will advise that the demurrer be overruled upon the usual terms.